IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KENNETH T.,                           )
                                      )
            Plaintiff,                )
                                      )
      v.                              )    1:23CV437
                                      )
MARTIN J. O'MALLEY,[1]                )
Commissioner of Social Security,      )
                                      )
            Defendant.                )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kenneth T. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Supplemental Security Income Benefits ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff previously received SSI based on disability as a child. As required by law, the Social Security Administration redetermined Plaintiff's eligibility for benefits when he attained

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

the age of 18, and on February 22, 2021, the agency determined that Plaintiff was no longer disabled under the Act as of February 1, 2021. (Tr. at 28, 166-70.) This determination was upheld upon reconsideration, which consisted of a hearing before a State agency Disability Hearing Officer. (Tr. at 28, 181-206.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 207-08.) On May 11, 2022, Plaintiff appeared at the subsequent telephonic hearing, at which Plaintiff, his mother, and an impartial vocational expert testified. (Tr. at 28, 45-84.) Although informed of his right to representation, Plaintiff chose to appear and testify without an attorney or other representative. (Tr. at 28, 50-52.) On October 4, 2022, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act as of February 1, 2021 (Tr. at 39), and on March 20, 2023, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. 5-11).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC').'" Id. at 179.³ Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ noted that Plaintiff had been eligible for SSI as a child. (Tr. at 31.) As noted above, Plaintiff was notified that he was found no longer disabled as of February 1, 2021 based on a redetermination of disability for adults. (Tr. at 31.) Because the issue of prior substantial gainful activity is irrelevant in these circumstances, the ALJ proceeded

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

directly to step two of the sequential analysis and determined that Plaintiff suffered from the following severe impairments:

> depression, anxiety, and attention deficit hyperactivity disorder (ADHD)[.]

(Tr. at 31.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 31-32.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform "a full range of work at all exertional levels." (Tr. at 33.) The ALJ further determined that Plaintiff required the following, non-exertional limitations:

> [Plaintiff] can understand/remember/and/or carry out simple, unskilled work of a routine and repetitive nature; he can maintain attention and concentration for at least two-hour periods of time sufficient to carry out unskilled work over the course of a normal workday for a normal work week; he can adapt to routine, infrequent workplace changes at a non-production pace (meaning no assembly line/conveyor belt type jobs); he can tolerate occasional interaction with the public; he can tolerate occasional interaction with coworkers and supervisors, meaning work not requiring teamwork for task completion, and not tandem work.

(Tr. at 33.) Plaintiff had no past relevant work to consider at step four. However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 38.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 39.)

Plaintiff now challenges the ALJ's decision in two respects. Specifically, he argues that the ALJ (1) "erred by failing to fully and fairly develop the record for an unrepresented claimant," and (2) "erred in her evaluation of the limiting effects [of] Plaintiff's psychological

6

disorders on his ability to work." (Pl.'s Br. [Doc. #12] at 1.) After a thorough review of the record, the Court finds that Plaintiff's second contention merits remand.

As an initial matter, Plaintiff alleges disability due to ADHD (combined type), anxiety, XYY syndrome which manifests as oppositional defiant disorder ("ODD") and bipolar mood disorder (including suicidal ideation), sensory integration disorder, and autism spectrum disorder. (Tr. at 33, 130, 146, 148, 154, 155, 158.) The record further indicates a diagnosis of possible borderline intellectual disability based on IQ scores ranging from 79 to 81. (Tr. at 155, 193.) Plaintiff was eligible for special education services based on emotional disability, rather than an IQ-based or learning impairment (Tr. at 156), and it was noted that "most of his issues appear to be related to impulsivity/poor frustration tolerance" (Tr. at 148).

At step two of the sequential analysis, as set out above, the ALJ found that only three of Plaintiff's alleged impairments—depression, anxiety, and ADHD—qualified as severe. (Tr. at 31.) In making this finding, the ALJ did not specifically address Plaintiff's additional impairments, other than noting that "any other condition, not specifically mentioned in this decision, but mentioned briefly in the record, is non-severe." (Tr. at 31.) The ALJ did not directly address Plaintiff's XYY syndrome and related oppositional defiant disorder and bipolar mood disorder,[4] nor did the ALJ directly address Plaintiff's autism spectrum disorder. Notably, the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to

---

[4] Notably, Plaintiff's oppositional defiant disorder was the basis for his disability determination as a child in 2016. (Tr. at 135.)

list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).[5] However, in the present case, Plaintiff contends that the ALJ's subsequent analysis also failed to account for the effects of his mental impairments on his ability to work. The Court agrees. In particular, Plaintiff contends that the ALJ erroneously rejected subjective evidence regarding the impact of Plaintiff's mental impairments on his functioning "because it was not sufficiently verified by some sort of objective indicator." (Pl.'s Br. at 9.)

When evaluating a claimant's symptoms, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 416.929. In Arakas v. Commissioner of Social Security, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

---

[5] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523; Social Security Ruling 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at * 5 (July 2, 1996); Social Security Ruling 86–8: Titles II and XVI: The Sequential Evaluation Process, 1986 WL 68636, at *5 (Jan. 1, 1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Comm'r, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Arakas, 983 F.3d at 95.

In Arakas, the Fourth Circuit further explained that some conditions, such as fibromyalgia, simply do not manifest themselves in objective signs and symptoms. Id. at 97. Several years later, in Shelley C. v. Commissioner of Social Security Administration, 61 F.4th 341, 361-62 (4th Cir. 2023), the court extended the reasoning in Arakas to include psychological impairments, and depression in particular. Because the symptoms of both fibromyalgia and depression were "'entirely subjective,'" the ALJs in these cases erred by "requiring that [the claimant's] subjective statements be validated by objective medical support." Shelley C., 61 F.4th at 361-62 (quoting Arakas, 983 F.3d at 96).

Plaintiff now argues that the ALJ in the present case also improperly relied on objective evidence to discount his subjective statements. Here, upon reviewing all of the testimony and the record as a whole, the ALJ concluded that "statements concerning the intensity, persistence[,] and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with

9

the medical evidence and other evidence in the record." (Tr. at 34.) In making this finding, the ALJ relied on multiple factors, including the longitudinal psychiatric treatment record, Plaintiff's IEP during the relevant time period, and the opinions of the State agency psychological consultants and the psychological consultative examiner. (Tr. at 35-37.) Nevertheless, the ALJ appears to discount evidence supportive of Plaintiff's claims primarily because that evidence is based on the assertions of Plaintiff and his mother. (See, e.g., Tr. at 37.) This is particularly true in the case of opinion issued by the psychological consultative examiner, Tanya Goodwin-Baldwin, PsyD, HSP-P.

At Plaintiff's hearing on May 11, 2022, the ALJ determined that she required updated and additional evidence to fairly evaluate Plaintiff's claim. Therefore, Plaintiff obtained updated medical records from the months predating Plaintiff's hearing and also ordered a consultative examination. Dr. Goodwin-Baldwin examined Plaintiff on June 8, 2022 and submitted an 8-page Comprehensive Clinical Psychological Evaluation to the Court, which the ALJ entered into the record later that month. (Tr. 355, 719-26.) In pertinent part, Dr. Goodwin-Baldwin diagnosed Plaintiff with autism spectrum disorder and concluded as follows:

> [Plaintiff] has mild impairment in abstract thinking, adequate general knowledge of information, judgement, and mathematics skills. He has adequate immediate recall and retention, recent memory, and remote memory. Based on [Plaintiff's] presentation, collateral information, and mental status response, he appears to have limited intellectual capacity to perform simple, routine, repetitive tasks as well as understand, retain, and follow instructions. [Plaintiff] may also have difficulty tolerating the stress associated with day-to-day work activity due to his emotional concerns. His prognosis is guarded due to his cognitive, adaptive, and social concerns.

(Tr. at 726.) The ALJ acknowledged this opinion in her decision, but found that it had "only some persuasive value." (Tr. at 37.) In doing so, she explained that Dr. Goodwin-Baldwin's opinion "is based mostly on [Plaintiff's] few subjective complaints but directly attributed to his mother's assertions. Likewise, [the] diagnosis of autism is not supported by the psychiatric treatment records, but rather on [Plaintiff's] mother's assertions of [Plaintiff's] symptoms." (Tr. at 37.) Notably, the ALJ provided no other basis for discounting Dr. Goodwin-Baldwin's clinical findings or the opinions based on them.[6]

The updated medical records submitted after the hearing also obtained the medical opinion from Plaintiff's treating psychiatrist, Dr. Laura Dunn. Dr. Dunn assessed Plaintiff with mood disorder, XYY trisomy, anxiety, ADHD, and pervasive developmental disorder, and opined that:

> I do not feel that he is able to do any full-time employment. Right now his mood instability, anger, anxiety, and social skills issues would interfere.

(Tr. at 701.) The ALJ also found that this opinion was less persuasive because the determination of whether an individual is unable to work is a finding reserved to the commissioner. (Tr. at 37.)

The only opinion evidence the ALJ found persuasive were the opinions of the State agency psychological consultants, Darolyn Hilts, PhD, and Brian Grover, PsyD. (Tr. at 37.)

---

[6] The psychiatric treatment records actually support Dr. Goodwin-Baldwin's diagnosis of autism, with records from Plaintiff's treating psychiatrist Dr. Laura Dunn reflecting diagnoses of Autism Spectrum Disorder, Bipolar mood disorder secondary to XYY with oppositional components, Anxiety, and ADHD since at least 2015 and continuing through 2022. (Tr. at 434-35, 436-37, 438-39, 440-41, 442-43, 444-45, 446-47, 448-49, 546-48, 554-56, 558-60, 561-62, 563-64, 566-67, 569-70, 632-34, 636-38, 643-45, 647-48, 649-50, 651-52, 653-54, 656-57, 659-60, 662-63, 664-65, 667-69, 671, 680-81, 683-85, 686-88, 690-92, 703-05, 706-08, 709-11, 712-13.) Thus, it is not clear what treatment records the ALJ was referring to in finding that the "diagnosis of autism is not supported by the psychiatric treatment records."

Specifically, the ALJ found that Drs. Hilts and Grover's opinions that Plaintiff "could perform simple tasks have substantial persuasive value because they are consistent with the IEP findings, medical source notes, and the psychological consultative examiner's notation that [Plaintiff] could follow simple instructions." (Tr. at 37.) This single sentence, which represents the ALJ's analysis in its entirety, presents several problems. First, the State agency consultants did not opine that Plaintiff could perform simple tasks, but rather that he could perform simple, routine, repetitive tasks "in a stable, low pressure setting with minimal interpersonal demands." (Tr. at 141-42, 150.) Second, Dr. Goodwin-Baldwin did not, in fact, opine that Plaintiff could "follow simple instructions," but rather that "he appears to have <u>limited intellectual capacity to perform</u> simple, routine, repetitive tasks as well as understand, retain, and follow instructions." (Tr. at 726) (emphasis added). Thus, the opinions are not consistent, as the ALJ suggests. Third, and most crucially, the State agency consultants' opinions predate the opinion of the consultative examiner by eight and sixteen months, respectively. (Tr. at 143, 151.) This means that the consultants did not have the benefit of the examiner's evaluation or opinions when forming their own assessments. The only person to evaluate Dr. Goodwin-Baldwin's findings was the ALJ herself. Despite having ordered the examination in order to build a full and fair picture of Plaintiff's limitations, it appears that the ALJ erroneously discounted the examiner's findings when—and because—they supported the subjective complaints of both Plaintiff and his mother. In doing so, she violated both <u>Arakas</u> and <u>Shelley C.</u>. The ALJ then reverted to the earlier evidence of the State agency consultants, despite previously finding that such evidence was insufficient to assess Plaintiff's claims. Such cherry-picking of the record renders the ALJ's decision unsupported by substantial evidence.

Because this matter requires remand, the Court need not address the additional issue raised by Plaintiff.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's Dispositive Brief [Doc. #13] is DENIED, and Plaintiff's Dispositive Brief [Doc. #12] is GRANTED to the extent set forth herein.

This, the 30th day of September, 2024.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge